[Crim. No. 6351.   In Bank.   Feb. 10, 1959.]

THE  PEOPLE,  Respondent,  v.  JOSEPH  CASTALDIA,
Appellant.

David A. Fall and Kenneth W. Gale for Appellant.

Edmund G. Brown, Attorney General, and Carl Baronkay,
Deputy Attorney General, for Respondent.

McCOMB, J.—Defendant appeals, after a jury trial, from (1) a judgment finding him guilty of accepting a bet on a horse race, contrary to the provisions of section 337a, subdivision 6, of the Penal Code, and (2) an order denying his motion for a new trial.

*Facts:* During the *voir dire* examination of the jury, juror Angela R. Kennedy, in response to questions of defendant's counsel, stated that there was nothing in the nature of a bookmaking case to cause her to hesitate to sit as a juror; that if some of the evidence took place in a bar it would not prejudice her in any manner; that she would not suffer herself to be biased against defendant; that she would consider the case solely on the evidence; and that she felt she could keep a free and open mind until all the evidence was in.

During the *voir dire* examination of juror James Russell, he stated that the fact that the case might involve gambling or that some of the events might have taken place in a barroom would not prejudice him and that he would answer the questions asked Mrs. Kennedy the same way she had.

A verdict finding defendant guilty was returned on May 22, 1957. He made a motion for a new trial, and in support of his motion for a new trial filed three affidavits.

One was by his counsel, reciting that on July 8, 1957, Angela R. Kennedy, one of the jurors who heard the case and returned the verdict, had related the following facts to him: During her service as a juror on the case, she commuted from her home to court and returned by bus. In returning to her home from court she transferred at Sixth Street and Harbor Boulevard in San Pedro. After transferring at that point at the close of the first day of the trial and while waiting for the bus to depart, she had a conversation with the bus driver, named Joe, with whom she had been acquainted for more than ten years. During the conversation she told him she was a juror in a bookmaking case, the defendant was Joseph Castaldia, the case arose out of bets allegedly made in January 1957 at the Bamboo Hut and Bank Café in San Pedro, and she was going to stop at those establishments some time and find out what kind they were. The driver told her there were a great many bookmakers at almost any establishment in the area and that during January 1957 the police had arrested a number of bookmakers there. She told affiant she did not remember the exact number of bookmakers the driver told her had been arrested, but she believed it was either 14 or 17.

A second affidavit, by Joseph Gualeni, was offered, wherein he stated the following facts: He was a bus driver and had been acquainted with Angela R. Kennedy for 15 years. During May 1957 he had a conversation with her in his bus while it was waiting to commence a scheduled run. She asked him if he knew the exact location of the Bamboo Hut. He told her he was uncertain of its exact location, but he believed it was on Sixth Street in San Pedro just west of the Bank Café. She told him that the ''bookie'' involved in the case in which she was sitting as a juror was someone from San Pedro who was picked up in that area, that the case involved the Bamboo Hut, and that she was going to take a look at it some time. Near the end of the conversation, Mrs. Kennedy stated ''that she had no respect for bookmakers and that she wished they would throw the book at all of them and put all of them away . . . that the defendant in the case, on which she was then presently sitting, as a juror, didn't have a chance that the jury on which she was then sitting was going to throw the book at him on the following morning.'' On occasions and dates prior to the above conversation, when the subject of gambling was mentioned on the bus, she stated in his presence that she disliked gambling and persons who gambled.

In the third affidavit, the affiant, Charles W. Eddy, one of the jurors in the case, stated the following facts: After the case was argued and given to the jury and during the discussions and balloting, juror Angela R. Kennedy had stated that there was not enough evidence to convict the defendant but she just could not turn him loose; that she was thoroughly familiar with the area in which the Bank Café was situated; that at every shoeshine stand, cigar stand or newsstand, one could buy a scratch sheet and place a bet anywhere. After about the third ballot, James Russell, foreman of the jury, stated that he could explain bookmaking to the other jurors. Mr. Russell stated that he knew a great deal about bookmaking for he had in fact lost his house to a bookmaker, and he thereafter spent approximately fifteen minutes explaining to the other jurors the use of a scratch sheet, the manner of making bets, and various means of gambling.

There was no contradiction of the foregoing facts.

Affidavits by defendant and his counsel disclosed that neither of them knew the facts stated in the other affidavits until after the rendition of the verdict.

*Questions:* First. *Was the affidavit of juror Charles W. Eddy properly received in evidence to show that jurors Kennedy and Russell had given false answers to questions on their voir dire examination?*

*Yes.* [1] It is the general rule in California that affidavits of jurors may not be used to impeach a verdict. (*Kollert* v. *Cundiff,* 50 Cal.2d 768, 772 [3] [329 P.2d 897].)

■ However, an exception to this general rule is: Affidavits of jurors may be used to set aside a verdict where the bias or disqualification of a juror was concealed by false answers on *voir dire* examination. (*Kollert* v. *Cundiff, supra,* at 773 [4a]; *Williams* v. *Bridges,* 140 Cal.App. 537, 540 [3] [35 P.2d 407]; *cf. People* v. *Galloway,* 202 Cal. 81, 92 [3] et seq. [259 P. 332].)

The facts in the present case bring the affidavit within the exception to the general rule, since jurors Kennedy and Russell gave false answers to the questions asked them on their *voir dire* examination. The affidavit was therefore admissible on the motion for a new trial.

■ Second. *Were jurors Kennedy and Russell guilty of misconduct which entitled defendant to a new trial?*

*Yes.* Section 1181 of the Penal Code provides, in part: "When a verdict has been rendered or a finding made against the defendant, the court may, upon his application, grant a new trial, in the following cases only:

". . . . . . . . . . . . .

"2. When the jury has received any evidence out of court, other than that resulting from a view of the premises, or of personal property;

"3. When the jury has . . . been guilty of any misconduct by which a fair and due consideration of the case has been prevented;

"4. When the verdict has been decided . . . by any means other than a fair expression of opinion on the part of all the jurors."

The conduct of the two jurors in giving false answers to questions asked them during their selection for jury service constituted misconduct on their part sufficient to warrant the granting of a motion for a new trial. (*Gackstetter* v. *Market Street Ry. Co.,* 10 Cal.App.2d 713, 723 [52 P.2d 998]; *People* v. *Galloway, supra,* at 93; *cf. Sherwin* v. *Southern Pac. Co.,* 168 Cal. 722, 726 [145 P. 92].)

■ Third. *Did the misconduct of the jurors result in a miscarriage of justice?*

*Yes.* An examination of the record discloses that the case was a close one. Officer Trotsky was the only witness who testified for the People. He gave evidence of overhearing a conversation between defendant and an unidentified person while he was standing some 12 feet from the speakers. He had consumed at least five beers that afternoon and said defendant was wearing a hat. He did not arrest defendant until some time later, and he made no effort at any time to ascertain the identity of the unknown person. On the other hand, defendant denied having had the conversation related by Officer Trotsky and also denied wearing a hat at the time of the alleged conversation.

On consideration of the entire record, we cannot say that in the absence of the misconduct complained of a different verdict would have been improbable. Therefore, the misconduct constitutes a miscarriage of justice within the meaning of article VI, section 4½, of the California Constitution. (*People* v. *Newson,* 37 Cal.2d 34, 45 [6] [230 P.2d 618].)

The judgment and order denying the motion for a new trial are reversed.

Gibson, C. J., Shenk, J., Carter, J., Traynor, J., Schauer, J., and Spence, J., concurred.