[Crim. No. 13605. Fourth Dist., Div. One. Mar. 7, 1984.]

THE PEOPLE, Plaintiff and Respondent, v.
HARVEY DIAZ, Defendant and Appellant.

COUNSEL

Jeffrey S. Wasserman, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Daniel J. Kremer, Chief Assistant Attorney General, Harley D. Mayfield, Assistant Attorney General, Jay M. Bloom, Keith I. Motley and John W. Carney, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**WORK, J.**—Harvey Diaz appeals a judgment after a jury convicted him of assault with a deadly weapon (knife) (Pen. Code, § 245, subd. (a)),[1] con-

---

[1]All statutory references are to the Penal Code.

tending the trial court abused its discretion in not discharging the jury foreperson upon learning (in midtrial) she concealed during voir dire she had been feloniously assaulted at knifepoint during an attempted rape. He claims this denied him his right to an impartial and unbiased jury. We hold the juror's failure to correctly respond to voir dire questions having a substantial likelihood to disclose facts showing a strong potential for juror bias prevented Diaz from intelligently inquiring into an area of potential bias upon which to base a challenge for cause or to knowingly exercise one of his remaining peremptory challenges. Because the concealment of the fact the juror had been a victim of the same crime with which Diaz was charged is so directly related to potential juror bias and because the presumption of prejudice arising from the jury misconduct has not been rebutted by either the People or a review of the entire record, we find the nondisclosure was prejudicial and reverse the judgment.

### Factual and Procedural Background

On February 14, 1981, at about 7 p.m., Tony Lopez picked up Maureen and Debby DeLeon to take them to a dance. As he entered his car, he was attacked by Steve Loronia and was joined by Ralph Cornejo and Diaz. Maureen saw Diaz unsnap a black case attached to his belt and then make repeated thrusting motions in the direction of Lopez; however, she could not tell whether Diaz was holding a knife. Lopez eventually escaped from the assailants, ran to a nearby home and was transferred to the hospital where he was treated for multiple knife wounds to his arm, chest and abdomen, including puncture wounds of his lung and liver. The assailants returned to their car and departed. Approximately 90 minutes later, the Brawley Police stopped the getaway car and arrested Diaz, who was wearing a knife and sheath on his belt.

A one-count information charged Diaz with assault with a deadly weapon and alleged he inflicted great bodily injury (§ 12022.7). After a jury trial, he was found guilty of both; however, his motion for new trial was granted. Upon retrial, a jury convicted him of only the assault with a deadly weapon.

During the second day of jury selection for the retrial, the court told the prospective jurors the nature of Diaz's charges, explaining he allegedly assaulted Lopez with a knife and by means of force likely to produce great bodily injury and inflicted great bodily injury upon his victim. The trial court posed a series of questions to the panel, including: "Have any of you or has any one close to you ever suffered a similar charge to that in this case? [¶] Have any of you or has anyone close to you ever been a complaining witness *or a victim in a case of this kind*?" (Italics added.) Prospective juror Wolski sat silent. Later she was present during the voir dire of pro-

spective juror Conti, who was asked by the district attorney if he or any of his friends had ever been involved in a knife fight. After Conti was challenged, Wolski was voir dired. The trial court asked if there was anything in her background or mind which if known to the attorneys might cause them to choose some other juror in her place. She responded "No." During questioning by defense counsel, she stated she had heard the questions asked of other jurors, and denied, if specifically asked, her answers would be different than theirs.

During the last day of a four-day trial and after the People rested, Wolski told court personnel she had been attacked at knife point during a rape attempt, leaving a scar on her chin and had stabbed her assailant. At an in-chambers hearing, *the bailiff stated Wolski told him she was the victim of an attempted rape during which the assailant held a knife on her, gashing her chin; she escaped, hunted him down and stabbed him, stating she stabbed him in the wrong place since she didn't kill him.* A court clerk corroborated the bailiff's testimony. Defense counsel then asked them their impression regarding her as an impartial juror. The bailiff responded: "My opinion, she is prejudiced as to violent crimes, especially that of women. She is obsessed with rape, with victims, and the men who perpetrate this act. I cannot honestly say that she would be an impartial juror as to violent crime. Now, whether it would tie into this, whether she would still have any knowledge of this crime as to supposedly rape, such that she has worked with or attempted rape, I don't know. But she does have a very acute obsession with rape." The clerk concurred. Wolski explained she was the victim of an attempted rape 13 years earlier when she was assaulted by a man who gashed her with a knife. When he let go, she pushed against him causing his knife to enter him. Although she stated she did not remember being specifically asked whether she had been a victim of any similar type of incident involving a knife, she later stated, when the judge asked her regarding similar incidents, it never occurred to her the assault on her was an assault with a deadly weapon. She stated the incident would not bias her perception of the case. The trial court then asked defense counsel whether he was willing to proceed with 11 jurors.[2] Upon defense counsel's refusal to so stipulate, the trial court denied his motion to dismiss Wolski.

### The Trial Court Erred in
### Not Discharging the Jury Foreperson

Diaz contends the trial court abused its discretion by not discharging Wolski as a juror for, either intentionally or unintentionally, not admitting during voir dire she had been threatened and cut by a knife-wielding

---

[2] No alternate jurors had been selected.

assailant. He contends her participation on the jury, indeed as foreperson, denied him his right to an impartial and unbiased jury, and states had the juror confessed this critical detail he would have excused her peremptorily.[3] Finally, he argues the trial court's inquiring whether he would stipulate to be tried by eleven jurors shows the court believed good cause existed or, at minimum, it was improperly influenced by the possibility of a mistrial for the lack of an alternate juror.

We conclude the trial court erred in refusing to discharge the juror and, in the absence of an alternate juror, discharging the jury pursuant to section 1123. The necessity of her expulsion rests on the lack of any evidence to rebut the presumption of prejudice arising from her nondisclosure and statements to court personnel during trial, besides her self-serving statement regarding her ability to deliberate impartially, in light of the underlying deprivation of Diaz' right to an impartial and unbiased jury through the undermining of the integrity of the voir dire process and controverting his statutory right to a specific number of peremptory challenges.

■ "[T]he peremptory challenge is a critical safeguard of the right to a fair trial before an impartial jury . . . ." (*People* v. *Williams* (1981) 29 Cal.3d 392, 405 [174 Cal.Rptr. 317, 628 P.2d 869].) "The failure to grant a defendant the prescribed number of peremptory challenges when the record reflects his desire to excuse a juror before whom he was tried is reversible error." (*People* v. *Shaw* (1965) 237 Cal.App.2d 606, 611 [47 Cal.Rptr. 96]; *People* v. *Diaz* (1951) 105 Cal.App.2d 690, 695 [234 P.2d 300].) Likewise, the improper refusal by the trial court to allow counsel to pose questions reasonably designed to assist in intelligently exercising peremptory challenges may constitute reversible error. (See *People* v. *Williams, supra,* 29 Cal.3d 392, 407-408, 410, 412.)

■ Juror concealment, regardless whether intentional, to questions bearing a substantial likelihood of uncovering a strong potential of juror bias, undermines the peremptory challenge process just as effectively as improper judicial restrictions upon the exercise of voir dire by trial counsel seeking knowledge to intelligently exercise peremptory challenges. (See *Odom* v. *State* (Miss. 1978) 355 So.2d 1381, 1383.) Where a party has examined the jurors concerning their qualifications during voir dire and any of them have failed to respond truthfully, " 'it is manifest that he [has been] deprived of his right to challenge for cause, and [has been] deceived into foregoing his right of peremptory challenge.' " (*People* v. *Galloway* (1927) 202 Cal. 81, 94 [259 P. 332].) Any particular manner in which a jury is impaneled which " 'prevents or embarrasses the full, unrestricted exercise by the accused of

---

[3]Diaz did not exhaust his peremptory challenges.

that right, must be condemned.'" (*People* v. *Diaz, supra,* 105 Cal.App.2d 690, 695, quoting *Pointer* v. *United States* (1894) 151 U.S. 396, 408 [38 L.Ed. 208, 214, 14 S.Ct. 410, 414].)

■ The denial of the right to reasonably exercise a peremptory challenge, be it by either the trial court or a juror through concealing material facts, is not a mere matter of procedure, but the deprivation of an absolute and substantial right historically designed as one of the chief safeguards of a defendant against an unlawful conviction. "[E]xperience has shown that one of the most effective means to free the jury box from persons unfit to be there is the exercise of the peremptory challenge. The right may not be abridged or denied. Arbitrary abridgment or denial of the right runs counter to principles vital to the integrity and maintenance of the system of a constitutional right of trial by jury." (*People* v. *Diaz, supra,* 105 Cal.App.2d 690, 697.)

■ "'The right of unbiased and unprejudiced jurors is an inseparable and inalienable part of the right to trial by jury guaranteed by the Constitution.'" (*Weathers* v. *Kaiser Foundation Hospitals* (1971) 5 Cal.3d 98, 110 [95 Cal.Rptr. 516, 485 P.2d 1132], quoting *People* v. *Galloway, supra,* 202 Cal. 81, 92; see *People* v. *Wheeler* (1978) 22 Cal.3d 258, 265 [148 Cal.Rptr. 890, 583 P.2d 748].)

■ Sections 1089 and 1123 authorize the trial court to discharge a juror before the jury returns its verdict if the juror becomes ill or upon the establishment of other good cause is found to be unable to perform his duty. (*People* v. *Van Houten* (1980) 113 Cal.App.3d 280, 287-288 [170 Cal.Rptr. 189]; *People* v. *Farris* (1976) 66 Cal.App.3d 376, 386 [136 Cal.Rptr. 45].) Since the determination of good cause is a matter within the sound discretion of the trial court (*People* v. *Goins* (1981) 118 Cal.App.3d 923, 926 [173 Cal.Rptr. 655]; *People* v. *Van Houten, supra,* 113 Cal.App.3d at p. 288; see *People* v. *Abbott* (1956) 47 Cal.2d 362, 371 [303 P.2d 730]), some courts have held that if there is any substantial evidence supporting the exercise of discretion, it will be upheld on appeal (*People* v. *Van Houten, supra,* 113 Cal.App.3d at p. 288). A similar rule has been applied to appellate review of the prejudicial effect of jury misconduct as being a question of fact for the trial court, holding a finding of no prejudice implied in the denial of a new trial should not be set aside unless there is no evidence to sustain it. (See cited cases in *People* v. *Brown* (1976) 61 Cal.App.3d 476, 481 [132 Cal.Rptr. 217].) ■ However, regarding the latter, some courts follow what we deem the more appropriate rule that "since jury misconduct challenges the fundamental rights to an unprejudiced jury and the fairness of the trial proceedings, this issue is an independent appellate issue to be adjudicated by this court based upon the whole record." (*People*

v. *Brown, supra,* 61 Cal.App.3d at p. 481; *People* v. *Guzman* (1977) 66 Cal.App.3d 549, 560 [136 Cal.Rptr. 163].) Our Supreme Court in *People* v. *Castaldia* (1959) 51 Cal.2d 569, 572-573 [335 P.2d 104], reviewing an order denying a motion for new trial, considered the entire record in order to determine whether a miscarriage of justice had resulted from jury misconduct consisting of two jurors giving false answers to questions probative of bias during voir dire. (See *People* v. *Galloway, supra,* 202 Cal. 81, 92; *People* v. *Resendez* (1968) 260 Cal.App.2d 1, 10-11 [66 Cal.Rptr. 818]; see also, *Hasson* v. *Ford Motor Co.* (1982) 32 Cal.3d 388, 417, fn. 10 [185 Cal.Rptr. 654, 650 P.2d 1171].) Considering the similarities between our review of this procedural matter compared to an order denying a new trial based on jury misconduct and because the jury process is one of "utmost sensitivity, with obvious constitutional overtones" (*People* v. *Guzman, supra,* 66 Cal.App.3d at p. 559), we believe this latter standard should be applied here.

■ A juror's misconduct is good cause which, under the provisions of either section 1089 or 1123, may permit the court to replace him or her with an alternate, or if there is no alternate, discharge the jury, impanel a new one, and retry the cause. (*People* v. *Guzman, supra,* 66 Cal.App.3d 549, 559.) ■ A juror's concealment, regardless whether intentional, during voir dire examination of a state of mind which would prevent a person from acting impartially is misconduct constituting an irregularity for which new trial may be granted. (*People* v. *Castaldia, supra,* 51 Cal.2d 569, 572; *People* v. *Galloway, supra,* 202 Cal. 81, 92-94; *City of Pleasant Hill* v. *First Baptist Church* (1969) 1 Cal.App.3d 384, 431 [82 Cal.Rptr. 1]; *People* ex rel. *Dept. Pub. Wks.* v. *Curtis* (1967) 255 Cal.App.2d 378, 388 [63 Cal.Rptr. 138]; *Shipley* v. *Permanente Hospital* (1954) 127 Cal.App.2d 417, 423-424 [274 P.2d 53, 48 A.L.R.2d 964], disapproved on other grounds in *Kollert* v. *Cundiff* (1958) 50 Cal.2d 768, 773 [329 P.2d 897], which was overruled on other grounds in *People* v. *Hutchinson* (1969) 71 Cal.2d 342, 351 [78 Cal.Rptr. 196, 455 P.2d 132]; see *Weathers* v. *Kaiser Foundation Hospitals, supra,* 5 Cal.3d 98, 110, fn. 5.)

■ Finally, a presumption of prejudice arises from any jury misconduct (*People* v. *Pierce* (1979) 24 Cal.3d 199, 207 [155 Cal.Rptr. 657, 595 P.2d 91]; *People* v. *Honeycutt* (1977) 20 Cal.3d 150, 156 [141 Cal.Rptr. 698, 570 P.2d 1050]), which "may be rebutted by an affirmative evidentiary showing that prejudice does not exist or by a reviewing court's examination of the entire record to determine whether there is a reasonable probability of actual harm to the complaining party resulting from the misconduct." (*Hasson* v. *Ford Motor Co., supra,* 32 Cal.3d 388, 417; *In re Winchester* (1960) 53 Cal.2d 528, 535 [2 Cal.Rptr. 296, 348 P.2d 904]; *People* v. *Phillips* (1981) 122 Cal.App.3d 69, 81-82 [175 Cal.Rptr. 703]; *People* v.

*Bullwinkle* (1980) 105 Cal.App.3d 82, 91-92 [164 Cal.Rptr. 163], disapproved on other grounds in *People* v. *Laiwa* (1983) 34 Cal.3d 711, 725-728 [195 Cal.Rptr. 503, 669 P.2d 1278].) "Some of the factors to be considered when determining whether the presumption is rebutted are the strength of the evidence that misconduct occurred, the nature and seriousness of the misconduct, and the probability that actual prejudice may have ensued." (*Hasson* v. *Ford Motor Co., supra,* 32 Cal.3d 388, 417.) In determining whether the presumption of prejudice has been rebutted, "it is clear that the usual 'harmless error' tests for determining the prejudicial effect of an error (*Chapman* v. *California* (1967) 386 U.S. 18, 23-24 [17 L.Ed.2d 705, 710-711, 87 S.Ct. 824, 24 A.L.R.3d 1065]; *People* v. *Watson, . . .* 46 Cal.2d 818, 836 [299 P.2d 243]) are inapplicable. Convincing evidence of guilt does not deprive a defendant of the right to a fair trial [citation] since a fair trial includes among other things the right to an unbiased jury . . . ." (*People* v. *Martinez* (1978) 82 Cal.App.3d 1, 22 [147 Cal.Rptr. 208]; *People* v. *Pierce, supra,* 24 Cal.3d 199, 207; see contra *People* v. *Castaldia, supra,* 51 Cal.2d 569, 573.)

██ Within the procedural context of this case, we agree with the reasoning of the Mississippi Supreme Court in *Odom* v. *State, supra,* 355 So.2d 1381, 1383, and adopt their instructions to the trial court on how to preliminarily handle matters of this nature. The court stated: "In *Jones* v. *State,* 133 Miss. 684, 98 So. 150 (1923), we held that counsel must have latitude in searching the minds and consciences of jurors in order to be able to exercise their peremptory challenges intelligently. Although that case dealt with the denial of the statutory right of a defendant to question prospective jurors directly and not have to propound questions through the presiding judge, the principle announced is applicable in the case *sub judice.* The failure of a juror to respond to a relevant, direct, and unambiguous question leaves the examining attorney uninformed and unable to ask any follow-up questions to elicit the necessary facts to intelligently reach a decision to exercise a peremptory challenge or to challenge a juror for cause. Therefore, we hold that where, as here, a prospective juror in a criminal case fails to respond to a relevant, direct and unambiguous question presented by defense counsel in voir dire, although having knowledge of the information sought to be elicited, the trial court should, upon motion for a new trial, determine whether the question propounded to the juror was (1) relevant to the voir dire examination; (2) whether it was unambiguous; and (3) whether the juror had substantial knowledge of the information sought to be elicited. If the trial court's determination of these inquiries is in the affirmative, the court should then determine if prejudice to the defendant in selecting the jury reasonably could be inferred from the juror's failure to respond. If prejudice reasonably could be inferred, then a new trial should be ordered." (Fn. omitted.)

Viewing the record in its entirety, we conclude the trial court erred in refusing to discharge juror Wolski. and, in the absence of an alternate juror, should have discharged the jury pursuant to section 1123. Concealment under the instant circumstances, regardless whether intentional, constitutes misconduct and good cause compelling the discharge of juror Wolski. The questions propounded to her were relevant to voir dire examination, unambiguous in character, and pertained to matters about which she had substantial knowledge of the information sought to be elicited. Within this context, the concealment of information is so directly related to potential juror bias, we conclude her misconduct was prejudicial. Here, armed with three remaining peremptory challenges after questioning Wolski, defense counsel was prevented from fairly evaluating whether to use one remaining peremptory challenge to remove her from the panel because she had been the victim of a felonious knife assault, the same crime for which she was being evaluated to sit in judgment.[4] On these facts, there is a strong inference of potential prejudice to defendant in his selection of a jury, as any astute lawyer would have examined Wolski more closely regarding her prior victimization at the hands of a knife-wielding assailant, resulting in the establishment of a rational basis upon which to challenge her peremptorily, if not for cause. (See *Odom* v. *State, supra,* 355 So.2d 1381, 1383; *Manuel* v. *State* (Okla.Crim. 1975) 541 P.2d 233, 237.) In light of the nature and seriousness of the misconduct involved depriving defendant of his right to obtain an impartial and unbiased jury through the voir dire and peremptory challenge process, as well as Wolski's role as foreperson serving as spokesperson and potentially leader of the jury, the presumption of prejudice has not been rebutted by the People by evidence showing the nonexistence of prejudice, or by an examination of the entire record. We cannot discount the possibility juror Wolski's potential partiality could have infected the deliberation process, because by electing her as foreperson the jury revealed their confidence and respect for her, thus highlighting the reasonable probability the remaining jurors would be substantially influenced by her views. (See *People* v. *Honeycutt, supra,* 20 Cal.3d 150, 158.) In any event, defendant was entitled to the protection of being convicted only by a unanimous verdict of 12 impartial jurors. (*People* v. *Pierce, su-*

---

[4]We disagree with *People v. Resendez, supra,* 260 Cal.App.2d 1, 10-11, holding to the contrary. One of the jurors there denied during voir dire any event of a similar nature had happened to her or any close friend or relative; however, during jury deliberations, she told the jury the same thing had happened to her when she was 15 and her stepfather had caressed her sexually and inquired, much as Resendez had done, whether it felt good. Thus, the juror believed Resendez was guilty. We believe the incident in the juror's life involving her stepfather pressing her to him, fully clothed, and asking whether it felt good, was so substantially similar to the facts of the underlying case involving sexual caressing beneath a child's undergarments and defendant's exposure that bias should have been implied in light of her statement to the jury. (*Infra.*) Compounded by the prejudicial effect of the nondisclosure upon the defendant's conducting of a meaningful voir dire, we believe defendant was entitled to a new trial.

pra, 24 Cal.3d 199, 208; *People* v. *Wheeler, supra,* 22 Cal.3d 258, 265-266; *People* v. *Brown, supra,* 61 Cal.App.3d 476, 481.)

 Accordingly, on the facts of this case, the People's failure to rebut the presumption of prejudice by an affirmative evidentiary showing,[5] the lack of any rebuttal evidence other than Wolski's self-serving statement of impartiality, the timely nature of Diaz' motion when learning of the misconduct during a short trial before jury deliberations, and the deprivation of his right to an impartial and unbiased jury through the undermining of the integrity of the voir dire process through the concealment of information so directly related to potential juror bias, we reverse the judgment.[6] Moreover, Diaz cannot be deprived of this complete right to a jury trial merely because the trial court miscalculated by not selecting alternate jurors.

The dissent's reliance on *McDonough Power Equipment, Inc.* v. *Greenwood* (1984) 464 U.S. 548 [78 L.Ed.2d 663, 104 S.Ct. 845], is misplaced. Preliminarily, the procedural posture of *Greenwood* is unlike our case because the lead opinion impliedly holds that under the federal system and these circumstances a protective presumption of prejudice arising from jury misconduct does not exist and the opinion is silent regarding whether defendant exhausted his peremptory challenges during voir dire. Secondly, regarding judicial economy, *Greenwood* involved postjudgment relief after

---

[5]When faced with concealment of the nature of juror Wolski's, compounded by her statements testified to by court personnel, it is understandable why the People did not attempt to affirmatively rebut the presumption of prejudice and likewise why a review of the entire record fails to do so when it consists in pertinent part of only her self-serving statement. For, concealment by veniremen during voir dire uncovered before jury deliberations inherently involves prejudicial misconduct which perhaps cannot be rebutted by either the People or a review of the entire record because of its subjective, intangible and subliminal nature. (See generally, *People* v. *Guzman, supra,* 66 Cal.App.3d 549, 559.) It is unlike the more objective case where it must be determined whether defendant was injured by jury misconduct in receiving evidence outside of court which can be more easily resolved by a review of the entire record by an affirmative response in favor of defendant to one of the following questions: "[1] whether the jury's impartiality has been adversely affected, [2] whether the prosecution's burden of proof has been lightened and [3] whether any asserted defense has been contradicted." (*People* v. *Martinez, supra,* 82 Cal.App.3d 1, 22.) Consequently, where there exist any doubts regarding juror impartiality, the matter must be resolved in favor of the accused.

[6]Although jury misconduct has been considered not to be per se reversible (*People* v. *Martinez, supra,* 82 Cal.App.3d 1, 22), and we have not relied upon a contrary proposition here, we question why, as in this case, where concealed information directly relates to potential juror bias, such nondisclosure should not be considered prejudicial per se. For, " '[t]he right to a fair and impartial jury is one of the most sacred and important of the guaranties of the Constitution. Where it has been infringed, no inquiry as to the sufficiency of the evidence to show guilt is indulged and a conviction by a jury so selected must be set aside.' " (*People* v. *Wheeler, supra,* 22 Cal.3d 258, 283, quoting *People* v. *Riggins* (1910) 159 Cal. 113, 120 [112 P. 862]; see also *People* v. *Williams, supra,* 29 Cal.3d 392, 412.)

a three-week trial, while this case concerns a motion for mistrial during the last day of a short four-day trial, where the court had failed to prudently have an alternate juror selected. Finally, the factual nature of the information concealed during voir dire by the juror in *Greenwood,* a products liability case, regarding his son's sustaining of an injury caused by an exploding tire, is not as inferentially reflective of potential bias as the undisclosed information here. In a criminal case, we reiterate a juror's silence in response to a pointed inquiry during voir dire asking if the juror had been a victim of the same type of crime for which the juror is being evaluated to sit in judgment (information so directly related—if not inferentially establishing—potential bias) constitutes juror misconduct giving rise to a presumption of prejudice regardless whether nondisclosure was unintentional and based upon a good-faith misunderstanding of the meaning of the question posed; for, the potential deprivation of the constitutional right to trial by an impartial jury without fault of the party prejudiced is independent from the intent of the juror to conceal. (*Shipley* v. *Permanente Hospital, supra,* 127 Cal.App.2d 417, 425.)[7] Considering the concealment prevented Diaz from intelligently inquiring into an area of potential bias upon which to base a challenge for cause or to knowingly exercise one of his remaining peremptory challenges, the prejudice presumed is compounded.

We agree with the dissent the preliminary determinations of whether the juror is biased and whether the litigant suffered any resulting prejudice rests with the trial court. However, "[b]ecause the bias of a juror will rarely be admitted by the juror himself, 'partly because the juror may have an interest in concealing his own bias and partly because the juror may be unaware of it,' [citation] it necessarily must be inferred from surrounding facts and circumstances. Therefore, for a court to determine properly whether bias exists, it must consider at least *two* questions: are there any facts in the case suggesting that bias should be conclusively presumed; and, if not, is it more probable than not that the juror was actually biased against the litigant. Whether the juror answered a particular question on voir dire honestly or dishonestly, or whether an inaccurate answer was inadvertent or intentional, are simple factors to be considered in this latter determination of actual bias. [Fn. omitted.]" (*McDonough Power Equipment, Inc.* v. *Greenwood, supra,* 464 U.S. 548, — [78 L.Ed.2d 663, 673, 104 S.Ct. 845, 851] (Brennan, J., conc. in the judgment), quoting *Smith* v. *Phillips* (1982) 455 U.S. 209, 221-222 [71 L.Ed.2d 78, 89, 102 S.Ct. 940, 948-949] (O'Connor, J., conc.).) In light of the surrounding circumstances here, highlighted by the inevitable subliminal ramifications upon a juror's ability to fairly and ob-

---

[7]As reflected by the separate concurring opinions in *Greenwood,* a majority of the justices stressed that regardless whether a juror's answer is honest or dishonest, bias may be inferred from the surrounding facts and circumstances of the particular case.

jectively judge a person accused of committing the same type of violent physical assault to which the juror has been subjected, we conclude the trial court abused its discretion in not discharging juror Wolski.

The probability of bias is substantial when a juror has been victimized by the same type of crime. As a result of such a similar experience, bias may be conscious and the juror may attempt to persuade the other jurors defendant is guilty regardless of the evidence. More likely, however, the prior experience may cause unconscious bias. Only individuals of strong character would not be affected in some way by their previous, identical experience. Subconsciously, the juror may tend to favor the prosecution because of emotional and psychological bonds perceived to exist with the defendant's victim. Indeed, the juror may sincerely try to be impartial, and yet be unable to do so. (See *Smith* v. *Phillips, supra,* 455 U.S. 209, 228-229 [71 L.Ed.2d 78, 93-94, 102 S.Ct. 940, 952] (Marshall, J. dis.).)

Further, it is highly unlikely under these circumstances an evidentiary hearing would reveal the bias. Given the human propensity for self-justification, it is entirely unlikely a juror who consciously failed to disclose information during voir dire in order to sit in judgment would admit it. Likewise, where the nondisclosure was unconscious, it is unlikely the juror would admit being unable to weigh the evidence fairly. Indeed, if the juror honestly, but falsely, believes he/she is impartial, no amount of questioning will lead to an admission of bias. (See *Smith* v. *Phillips, supra,* 455 U.S. 209, 228-232 [71 L.Ed.2d 78, 93-96, 102 S.Ct. 940, 951-953].) In this case, the trial court's determination is based solely upon an acceptance of the juror's representation, and after Diaz refused to proceed with only 11 jurors.

Consequently, in cases like this one where the probability of bias is extremely high and where the evidence adduced at a hearing can offer little assurance prejudice does not exist, bias should be implied as a matter of law. (*Id.* at p. 231-232 [71 L.Ed.2d at pp. 95-96, 102 S.Ct. at p. 953].) Moreover, specifically under these circumstances, where the effect of the nondisclosure deprives the defendant of his right to guarantee an impartial and unbiased jury by preventing him from intelligently exercising his statutory number of peremptory challenges and thus undermining the integrity of the voir dire process, the trial court abused its discretion in not discharging the juror and retrying the matter. The right to a trial by an impartial jury is too important, the safeguard of that right through a meaningful voir dire process is too crucial, and the threat to that right is too great to justify under these circumstances actual proof of bias. (See *ibid.*)

*Disposition*[8]

Judgment reversed.

Staniforth, Acting P. J., concurred.

**JOSEPH, J.***—I dissent.

It is clear, as stated by the majority, that Ms. Wolski, a juror who had been a victim of an attempted rape in which the assailant held a knife to her throat and slightly cut her chin in 1968 did not reveal such event during her voir dire examination. At trial this juror's nondisclosure was brought to the court's attention. During the court's and counsel's questioning of the juror she stated:

"It was back in 1968, and I was accosted or whatever, assaulted, whatever. And a man pushed me up against a building and it was attempted rape. He had a knife at me. I—I guess you would say I stabbed him. I—he let it go, and I pushed against him and the knife did enter. I didn't grab the knife in my hand. He had it in his hand, so I don't know how you would—how you would define that.

". . . . . . . . . . . . . . . . . . . . .

"It was in his shoulder, and I don't know to what extent. I have no idea what happened to him. I don't know.

". . . . . . . . . . . . . . . . . . . . .

"[I]n fact, when—when the Judge asked me if something about a similar incident, I didn't even think of it as similar. It never even occurred to me as being similar.

"Mr. Wingfield: In other words, the incident that occurred to you, you consider that a rape as opposed to assault with a deadly weapon?

"The Witness: I consider it rape.

"Mr. Wingfield: You didn't really see or feel that that was similar enough to the present charges in this case for you to really make a response; is that correct?

---

[8]In light of our holding, we do not address Diaz' remaining contentions.
*Assigned by the Chairperson of the Judicial Council.

"THE WITNESS: I made no connection."

Several times during the examination, the juror said her prior experience would not affect or bias her decision. The juror clearly stated she did not consider the 1968 event to be an assault, but rather a rape. In her mind there was no connection between her experience as a victim of rape and appellant's alleged act of assault with a deadly weapon.

The trial court saw and heard the entire examination of the juror and several court attaches who testified regarding the juror's state of mind. The trial court concluded the juror should not be removed from the panel. The majority here, in reliance solely upon the transcript, concludes the nondisclosure is so prejudicial that the conviction must be reversed.

If the trial court's determination is ignored, the ruling in this case creates the potential for reversal of every jury verdict where a seated juror does not reveal a relevant background fact during voir dire. The shortcoming of this holding is that every conviction stands in jeopardy based upon juror revelations both during and after trial. Such a result may well lead to extensive posttrial interviews or background investigations of large numbers of jurors.

The majority finds, in reliance on *People* v. *Pierce* (1979) 24 Cal.3d 199, 207 [155 Cal.Rptr. 657, 595 P.2d 91]: ". . . a presumption of prejudice arises from any jury misconduct . . . which 'may be rebutted by an affirmative evidentiary showing that prejudice does not exist or by a reviewing court's examination of the entire record to determine whether there is a reasonable probability of actual harm to the complaining party resulting from the misconduct.'"

The nondisclosure of the juror in this case cannot be equated with the improper conduct of the juror in *Pierce*. The *Pierce* juror, in spite of the usual daily admonishment, contacted one of the investigating officers, who was a principal prosecution witness, to ask questions about evidence presented and not presented to the jury. The contacted officer provided answers to some questions. All of this was outside the trial and totally unknown to the trial judge and counsel. A presumption of prejudice is obviously appropriate where a juror is informed by a law enforcement prosecution witness about the absence of fingerprints and photographs, and receives an explanation regarding the confusing nature of the prosecution's sketch of the crime scene.

The *Pierce* conclusion is not applicable here where the prospective juror explained she felt she had been a victim of an attempted rape which she believed was completely different from the charged assault. The majority here, by interweaving juror misconduct cases with fair voir dire cases, has lost track of the issue presented to this court. The relevant California case relating to voir dire is *People* v. *Resendez* (1968) 260 Cal.App.2d 1 [66 Cal.Rptr. 818], *Pierce, supra,* 24 Cal.3d 199, *People* v. *Honeycutt* (1977) 20 Cal.3d 150 [141 Cal.Rptr. 698, 570 P.2d 1050], and the other California cases cited on pages 934-935 of the majority opinion are not cases involving voir dire.

The majority's further discussion of the juror's "self-serving" statements turns this proceeding upside down. It is not the purpose of the law to try jurors, and the best person to determine whether Ms. Wolski's statements were self-serving was the trial judge.

The United States Supreme Court recently reversed a Tenth Circuit Court of Appeals decision ordering a new trial based on juror nondisclosure in voir dire. Justice Rehnquist, delivering the opinion of the court, stated: "We hold that to obtain a new trial in such a situation, a party must first demonstrate that a juror failed to answer honestly a material question on voir dire, and then further show that a correct response would have provided a valid basis for a challenge for cause. The motives for concealing information may vary, but only those reasons that affect a juror's impartiality can truly be said to affect the fairness of a trial." (*McDonough Power Equipment, Inc.* v. *Greenwood* (1984) 464 U.S. 548, — [78 L.Ed.2d 663, 671, 104 S.Ct. 845, 850].) All the justices agreed the appropriate forum for determining the issue of juror bias is the trial court. (See conc. opns. of Blackmun, J. and Brennan, J., *id.,* at pp. —— [78 L.Ed.2d at pp. 672-674, 104 S.Ct. at pp. 850-852].)

The Supreme Court's realistic approach is demonstrated in the following language: "It seems doubtful that our judicial system would have the resources to provide litigants with perfect trials, were they possible, and still keep abreast of its constantly increasing caseload. . . .

". . . . . . . . . . . . . . . . . . . . . . . . .

"The varied responses to respondent's question on voir dire testify to the fact that jurors are not necessarily experts in English usage. Called as they

are from all walks of life, many may be uncertain as to the meaning of terms which are relatively easily understood by lawyers and judges. . . ." (*McDonough Power Equipment, Inc.* v. *Greenwood, supra,* 464 U.S. 548, — [78 L.Ed.2d 663, 669-671, 104 S.Ct. 845, 848-849].)

Although *McDonough* was a products liability case, the reasoning therein is supported by California law. In *People* v. *Resendez, supra,* 260 Cal.App.2d 1, a juror realized during deliberation she had had an experience virtually identical to that of the victim in the case being tried and mentioned this to the jury. No disclosure of this fact was made during voir dire. The Court of Appeal stated: "Appellant further contends that he was entitled to a new trial on account of misconduct by the jury. He asserts that a new trial should be granted where a juror gives false answers to questions asked him during his selection for jury service. [Citations.] . . . .

"As a general rule in California, testimony or affidavits of jurors may not be used to impeach a verdict [citation] unless the jurors resorted to a determination by chance [citation] or the bias or disqualification of a juror was concealed by false answers on *voir dire.* [Citations.] It is the well established policy of the courts that the stability of judgments must be preserved and a juror should be permitted to impeach a verdict only when the plainest principles of justice would otherwise be violated. [Citation.] Mrs. Robinson did not intentionally conceal, but had forgotten the earlier incident in her life which precipitated no legal proceedings and differed substantially from the subject case. . . ." (*People* v. *Resendez, supra,* 260 Cal.App.2d 1, 10-11.)

Although the majority "overrules" *Resendez* as part of its analysis, the case still exists and its facts are more applicable to this case than the outrageous facts of *Pierce, supra,* 24 Cal.3d 199, relied on by the majority. The majority cites cases requiring fair voir dire, open questioning of prospective jurors, open use of peremptory challenges, and defendants' rights to a fair and impartial jury. Nothing in this proceeding suggests appellant was deprived of any of these rights. The jury's deliberations were lengthy. The jury partially found for the appellant in determining he did not personally inflict great bodily injury under Penal Code section 12022.7.

Appellant's due process rights were not violated by an unintentional failure of a juror to disclose a prior involvement as a victim of a criminal act which might lead to a peremptory challenge. Perfect voir dire is rarely attained. Since *People* v. *Williams* (1981) 29 Cal.3d 392 [174 Cal.Rptr. 317, 628 P.2d 869], counsel may examine very broadly in voir dire. Given the opportunity to have a verdict reversed based on nondisclosure, counsel may now choose to examine very narrowly or not at all during voir dire.

The facts here do not require a reversal. The person in the best position to evaluate the request to remove the juror was the trial judge. Deference should be given to his decision and the conviction should be affirmed.

Respondent's petition for a hearing by the Supreme Court was denied May 2, 1984. Mosk, J., was of the opinion that the petition should be granted.