Filed 9/4/15  P. v. Stasko CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>BRIAN BARRETT STASKO,<br><br>        Defendant and Appellant. | A140211<br><br>(Lake County<br>Super. Ct. No. CR 932208) |

Brian Barrett Stasko, who was 21 years old at the time of the offenses, was convicted of two counts of unlawful sexual intercourse with a minor (Pen. Code, § 261.5, subd. (d))[1] and two counts of lewd and lascivious acts with a minor under 14 (§ 288, subd. (a)).  Stasko contends that his trial counsel rendered ineffective assistance by conducting inadequate voir dire during jury selection.  We disagree and affirm.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Because sufficiency of evidence to support the verdict is not at issue, we present only a brief summary of the evidence presented at trial.  In November 2012, B.S., who was 13 years old at the time, attended two parties at Stasko's house where she consumed alcohol.[2]  B.S. said an adult female was at the first party who was "hanging out" with Stasko and "later on in the night they went into the room together by themselves."  At the

---

[1] Undesignated statutory references are to the Penal Code.

[2] B.S. admitted that she had previously told an investigator she only went to Stasko's house on one occasion.

second party, B.S. began to feel tired after drinking alcohol, and fell asleep in Stasko's bedroom after he said "[she] could go in there and that [she'd] be fine." According to B.S., Stasko later woke her up, forced her to engage in oral sex, and raped her—once that night and once the following morning.

Stasko, in his defense, presented testimony from a woman who stated she attended a party at Stasko's house, sometime between August and November 2012, when B.S. was also present. The woman went to bed with Stasko, and woke up with him the next morning. She never saw B.S. and Stasko together. Stasko also presented evidence that he had denied the charged offenses and the opinion of a psychologist that Stasko had no apparent psychosexual disorders and that Stasko's denial was credible.

Stasko was charged, by amended information, with oral copulation on a minor under 14 and more than seven years younger than himself (§ 269, subd. (a)(4); count one); two counts of rape of a minor under 14 and more than seven years younger than himself (§ 269, subd. (a)(1); counts two & three); and three counts of lewd and lascivious acts with a minor under 14 (§ 288, subd. (a); counts four, five, & six). The jury returned verdicts finding Stasko not guilty on counts one, two, three and four, but guilty of the lesser included offenses for counts two and three—unlawful sexual intercourse with a minor under 16. (§ 261.5, subd. (d)). The jury also found him guilty of counts five and six—lewd and lascivious acts with a minor under 14 (§ 288, subd. (a)). Stasko was sentenced to eight years in state prison and filed a timely notice of appeal.

## II.    DISCUSSION

"In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, *by an impartial jury . . . .*" (U.S. Const., 6th Amend., italics added.) "Voir dire plays a critical function in assuring the criminal defendant that his Sixth Amendment right to an impartial jury will be honored." (*Rosales-Lopez v. United States* (1981) 451 U.S. 182, 189, italics omitted.) On appeal, Stasko points out that Juror Nos. 352654 and 344191, who were sworn to serve on the jury, indicated on questionnaires that they had been victims of molestation and rape. He complains that his trial counsel did not ask follow-up questions, during jury voir dire, regarding the impact of this personal history

2

on the jurors' ability to be impartial and contends trial counsel's failure to do so constituted ineffective assistance of counsel. We disagree.

A.     *Background*

On the first day of jury selection, the prospective jurors were given detailed questionnaires to complete, under oath, in advance of oral voir dire.[3] Defense counsel said the questionnaire was "far more extensive than I ever would have dreamed," and noted that he would be leaving the courtroom "with a huge pile of questionnaires."[4] The court told both counsel: "After the two of you have spent the evening with the questionnaires, if there are jurors who have an obvious bias that the two of you can agree to stipulate to excuse them, we can start [with] that . . . . There's no reason to go through lots of questions on somebody who [is] obviously biased." Both counsel agreed to this approach. The trial court reiterated: "[D]on't ask them a lot of questions that are repeating the questions in the questionnaires."

The following day, the prosecutor and defense counsel stipulated to excuse 17 jurors for cause, based on their answers to the questionnaires. However, defense counsel told the court, "so the record is clear, I didn't make it past the 50s." The court said: "Reading the questionnaires?" Counsel replied: "Well, I'm hoping to catch up at lunch. I went to bed at 1:00 o'clock last night." He added, "I don't have that much more work to do." The court agreed to permit a break in the proceedings if defense counsel needed it. However, the record does not reflect a request for such a break or any further indication that defense counsel had not reviewed all of the questionnaires.

Juror No. 352654 was a 35-year-old man from El Paso, Texas. The written questionnaire included the question: "Do you know of any reason why you would not be a completely open-minded and impartial juror in this case?" Juror No. 352654 answered, "Only that I was molested when young and never told anyone, but I can be impartial."

---

[3] "[A] juror questionnaire is part of the 'examination' for purposes of Code of Civil Procedure section 232." (*People v. Lewis* (2001) 25 Cal.4th 610, 630.)

[4] The record contains 1700 pages of jury questionnaires.

He also responded affirmatively to written questions asking whether he could be fair and impartial in determining Stasko's guilt or innocence, whether he could follow the law, and whether he could decide guilt or innocence based solely on the evidence.

Juror No. 344191 was a 65-year-old woman from the Netherlands. Juror No. 344191's questionnaire disclosed that she "was raped by a high school teacher" and "this is only the second time I have mentioned this." However, she also responded affirmatively to written questions asking whether she could follow the law and whether she could decide guilt or innocence based solely on the evidence.

During voir dire, neither juror was further questioned regarding his or her personal history of sexual abuse, and how that history would affect his or her ability to be impartial. But before beginning voir dire, defense counsel indicated he "only [had] three or four areas [he was] interested in going into." Defense counsel only asked Juror No. 344191 general questions, to which she responded that she was not predisposed to either party and could "be fair." Defense counsel asked Juror No. 352654 if he understood that it was important to hear both sides of the case before making up his mind, and he said "yes." Juror No. 352654 also told defense counsel that he understood it was not defense counsel's job to prove Stasko's innocence. He said, "It makes sense," when the district attorney advised him that the People have the burden or proving Stasko's guilt.

Defense counsel did not raise peremptory or "for cause" challenges to either juror. After Stasko exercised six of his 20 peremptory challenges, a jury including Juror Nos. 352654 and 344191 was sworn without objection.

B.    *Analysis*

"Under both the Sixth Amendment to the United States Constitution and article I, section 15, of the California Constitution, a criminal defendant has the right to effective assistance of counsel." (*People v. Ledesma* (1987) 43 Cal.3d 171, 215; *Strickland v. Washington* (1984) 466 U.S. 668, 684–686.) This right "entitles [the defendant] to 'the reasonably competent assistance of an attorney acting as his diligent conscientious advocate.' " (*Ledesma,* at p. 215.) To establish ineffective assistance of counsel, a

defendant must show: (1) that counsel's performance was so deficient that it fell below an objective standard of reasonableness, under prevailing professional norms and (2) that the deficient performance was prejudicial, rendering the results of the trial unreliable or fundamentally unfair. (*Strickland,* at pp. 688, 692; *Ledesma*, at pp. 216–217.) To satisfy the prejudice requirement, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the results of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." (*Strickland*, at p. 694.)

Stasko's ineffective assistance of counsel claim lacks merit. He contends: "Counsel not only failed to propose jurors for stipulated disqualification whose backgrounds would have caused them to be dismissed without cavil, he failed to voir dire them on their violent pasts of childhood sexual assault and rape.[5] Without such voir dire, he could not have had a reasonable tactical justification for choosing to retain those jurors."

"It is the defendant's burden to demonstrate the inadequacy of trial counsel. . . . Defendant's burden is difficult to carry on direct appeal." (*People v. Anzalone* (2006) 141 Cal.App.4th 380, 394.) In examining a claim of ineffective assistance of counsel, "[r]eviewing courts defer to counsel's reasonable tactical decisions . . . , and there is a 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.' " (*People v. Lucas* (1995) 12 Cal.4th 415, 436–437.) We may reverse on direct appeal only if " ' "the record on appeal affirmatively discloses that counsel had no rational tactical purpose for [his or her] act or omission." ' " (*Id*. at p. 437.)

Here, the record does not affirmatively demonstrate the reason defense counsel allowed Juror Nos. 352654 and 344191 to serve without objection. Stasko maintains that

---

5 Stasko does not argue that defense counsel was ineffective in failing to raise peremptory challenges, presumably "[b]ecause the use of peremptory challenges is inherently subjective and intuitive, [and] an appellate record will rarely disclose reversible incompetence in this process." (*People v. Montiel* (1993) 5 Cal.4th 877, 911.)

defense counsel's failure to raise challenges for cause had no rational tactical purpose because other excused prospective jurors had also suffered sexual abuse or had loved ones who had been sexually assaulted. Stasko overlooks key differences between the questionnaires submitted by those excused prospective jurors and Juror Nos. 352654 and 344191. In particular, the excused prospective jurors indicated strong personal views and a belief that they could not be fair and impartial. On the other hand, Juror Nos. 352654 and 344191 each stated their ability to base their decisions solely on the evidence, and each reiterated an ability to be impartial during oral voir dire. Furthermore, defense counsel could have had other reasons to believe Juror Nos. 352654 and 344191 might benefit Stasko's defense.

Our Supreme Court has rejected a similar argument. (*People v. Kipp* (1998) 18 Cal.4th 349, 366–368 (*Kipp*).) In *Kipp,* the defendant contended that his trial counsel should have conducted further voir dire and challenged one juror (either for cause or peremptorily) who indicated the defendant's appearance "turned [her] off." (*Id.* at pp. 364, 366.) Our Supreme Court reasoned: "Defendant has not demonstrated that there could be no satisfactory explanation for counsel's omission. For example, defense counsel may have reasonably concluded, based on [the juror's] appearance, demeanor, and responses to voir dire, that she was a fair-minded person who, if selected for the jury, would make a determined and ultimately successful effort not to allow her distaste for defendant's personal appearance to influence her judgment as to his guilt or as to the appropriate penalty. In reaching the decision not to challenge [the juror] for cause, counsel may also have been appropriately influenced by her responses to questions concerning her death penalty views. When asked what purpose she thought the death penalty serves, [the juror] replied: 'I think it only serves as a deterrent to other people. I—I don't like the death penalty—I'm not into putting people to death.' . . . [¶] Based on this response, counsel may have evaluated [the juror] as being predisposed to select a sentence of life without parole rather than death, and counsel may have concluded that this characteristic outweighed her manifest dislike for defendant's appearance." (*Id.* at pp. 367–368.)

The *Kipp* court reached a similar conclusion regarding the failure to conduct further voir dire. It said, "Defendant has not demonstrated that there could be no satisfactory explanation for counsel's omission. For example, defense counsel may have concluded from their responses to other questions that these prospective jurors would be favorably inclined to the defense, and counsel may have decided that any further voir dire would increase the risk that the prospective jurors would be challenged by the prosecution. [¶] [M]ere speculation that additional questioning might have disclosed a ground for challenge is insufficient to [establish ineffective representation]." (*Kipp, supra,* 18 Cal.4th at p. 368; accord, *People v. Mendoza* (2000) 24 Cal.4th 130, 164–165.)

Just as in *Kipp*, the record here is also silent as to why defense counsel did not conduct further voir dire of the challenged jurors.[6] Accordingly, Stasko can prevail on his ineffective assistance claim only if there is no satisfactory explanation.[7] (*Kipp, supra,* 18 Cal.4th at p. 367.) Contrary to Stasko's suggestion, we can see several tactical reasons for asking these jurors no follow-up questions. "[N]o questions . . . may be the best tactic for a number of reasons." (*People v. Freeman* (1994) 8 Cal.4th 450, 485.) For example, further questioning by defense counsel may have convinced the prosecutor that the juror would be favorable to the defense or served only to antagonize. (*Ibid.*)

It would also be speculative to conclude any of the above omissions were prejudicial. An ineffective assistance of counsel claim fails when "[n]othing in the record suggests the actual jury *was biased*, or that it is reasonably probable a different jury would have been more favorably disposed towards defendant." (*People v. Freeman,*

---

[6] Significantly, Stasko's counsel elected to specifically inquire about another prospective juror's questionnaire disclosure of a "poss[ible] sexual" assault when she was very young. Following voir dire, that juror was excused by stipulation. Failure to conduct similar follow-up questioning with Juror Nos. 352654 and 344191 suggests a conscious choice by counsel not to do so.

[7] Stasko's argument that trial counsel rendered ineffective assistance by conducting voir dire inadequate to uncover juror bias may be "more appropriately raised in a petition for writ of habeas corpus." (*People v. Whalen* (2013) 56 Cal.4th 1, 51, fn. 20.)

7

*supra,* 8 Cal.4th at p. 487, italics added.)  Here, nothing indicates that either juror was actually biased.  Stasko's assertion that these jurors' questionnaire answers would have resulted in their dismissal "without cavil" is simply wrong.  " 'Actual bias' is 'the existence of a state of mind on the part of the juror in reference to the case, or to any of the parties, which will prevent the juror from acting with entire impartiality, and without prejudice to the substantial rights of any party.' " (*People v. Foster* (2010) 50 Cal.4th 1301, 1325, quoting Code Civ. Proc., § 225, subd. (b)(1)(C).)  In contrast to the jurors involved in the authority relied on by Stasko, Juror Nos. 352654 and 344191 each expressly indicated their ability to serve impartially.  (Cf. *U.S. v. Gonzalez* (9th Cir. 2000) 214 F.3d 1109, 1113–1114 [potential juror's personal history and "equivocal" responses about her ability to be fair and impartial necessitated excuse for cause]; *State v. Carter* (Wis.Ct.App. 2002) 641 N.W.2d 517, 519 [attorney provided ineffective assistance when he did not challenge juror who indicated his brother-in-law's sexual assault would influence ability to be fair and impartial].)

Stasko's reliance on cases concerning "implied bias" do not compel a contrary conclusion.  (See, e.g., *People v. Diaz* (1984) 152 Cal.App.3d 926, 939.)  In *Diaz,* the defendant was convicted of assault with a deadly weapon (§ 245, subd. (a)), a knife, and argued on appeal he was denied an impartial jury because the trial court did not discharge the jury foreperson upon learning she had concealed her history of having been assaulted at knifepoint during an attempted rape.  (*Diaz,* at pp. 929–930, 931.)  Specifically, the defendant argued that had he known of this history, he would have exercised one of his three remaining peremptory challenges to excuse the juror.  (*Id.* at pp. 932, 936.)  The reviewing court observed:  "The denial of the right to reasonably exercise a peremptory challenge, be it by either the trial court or a juror through concealing material facts, is not a mere matter of procedure, but the deprivation of an absolute and substantial right historically designed as one of the chief safeguards of a defendant against an unlawful conviction. . . . [¶] . . . [¶] [And] a presumption of prejudice arises from any jury misconduct . . . ."  (*Id.* at pp. 933–934.)  It held "*the juror's failure to correctly respond to voir dire questions* having a substantial likelihood to disclose facts showing a strong

8

potential for juror bias prevented [the defendant] from intelligently inquiring into an area of potential bias upon which to base a challenge for cause or to knowingly exercise one of his remaining peremptory challenges." (*Id.* at p. 930, italics added.) The judgment was reversed "[b]ecause the concealment of the fact the juror had been a victim of the same crime with which [the defendant] was charged is so directly related to potential juror bias *and because the presumption of prejudice arising from the jury misconduct has not been rebutted . . . .*" (*Ibid.*, italics added)

This case, unlike *People v. Diaz* and Stasko's other implied bias cases, does not involve any juror dishonesty.[8] (*Dyer v. Calderon* (9th Cir. 1988) 151 F.3d 970, 979, 981–982 [juror's dishonesty during voir dire gave rise to inference of implied bias]; *Burton v. Johnson* (10th Cir. 1991) 948 F.2d 1150, 1159 [same].) Furthermore, the rape and molestation suffered by the challenged jurors in this case were suffered decades ago and appear dissimilar to the charged offenses. Nothing in this record reflects that the two jurors were, as Stasko alleges, "predisposed to convict." We decline to hold that anyone having suffered a sexual offense is incapable, as a matter of law, of being impartial in the trial of an accused rapist. (See *Gonzales v. Thomas* (10th Cir. 1996) 99 F.3d 978, 989–990.)

### III.    DISPOSITION

The judgment is affirmed.

---

[8] The court in *People v. Diaz* court also stated: "[D]efense counsel was prevented from fairly evaluating whether to use one remaining peremptory challenge to remove [the juror] from the panel because she had been the victim of a felonious knife assault, the same crime for which she was being evaluated to sit in judgment. On these facts, there is a strong inference of potential prejudice to defendant in his selection of a jury, *as any astute lawyer would have examined* [*the juror*] *more closely regarding her prior victimization* at the hands of a knife-wielding assailant, resulting in the establishment of a rational basis upon which to challenge her peremptorily, if not for cause." (*People v. Diaz, supra,* 152 Cal.App.3d at p. 936, italics added & fn. omitted.) However, the *Diaz* court was not considering an ineffective assistance of counsel claim. Opinions are not authority for propositions not considered. (*People v. Avila* (2006) 38 Cal.4th 491, 566.)

_____

BRUINIERS, J.


WE CONCUR:


_____

JONES, P. J.


_____

NEEDHAM, J.