[No. B004380. Second Dist., Div. Four. May 23, 1985.]

THE PEOPLE, Plaintiff and Respondent, v.
RICHARD JACKSON III, Defendant and Appellant.

**COUNSEL**

George W. Garver for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Robert F. Katz and Marc E. Turchin, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**KINGSLEY, Acting P. J.**—The defendant appeals his conviction for possession of marijuana for the purpose of sale. (Health & Saf. Code, § 11359.) We affirm.

### FACTS

On the afternoon of May 29, 1982, the Culver City Police Department received a routine burglary call indicating that the front door of defendant's apartment had been kicked open. The defendant was not home at the time and the call was made by the security guard at the apartment complex where the defendant lived. When police officers entered the apartment to investigate the burglary, they observed a strong odor of marijuana. A search warrant was then issued and a search of the premises revealed 7 suitcases containing approximately 113 pounds of marijuana. The defendant was convicted of possession of marijuana for the purpose of sale (Health & Saf. Code, § 11359) and was sentenced to three years probation, with the first six months to be served in the county jail, and a $1,000 fine.

### CONTENTION

Defendant's sole contention is that the trial court was in error in not excusing a juror. Prior to empanelling the jury, defense counsel asked the prospective jurors on voir dire:

"Another catch-all question: Is there anybody in the jury who up to this point has had anything in their background come to mind who's wondering if I asked you a question where you would have to tell me about it? This is what's known as the skeleton in the closet question.

"You know, for example, is there someone whose son is a policeman and they wonder if they would have to tell us about that, and so forth.

"Anything in your background where you thought if I asked you a question and haven't mentioned—you haven't mentioned already of course."

Juror George Burns did not respond to this question.

The trial proceeded, and on the third day of jury deliberation, the court received from Juror Burns the following note, which it read into the record:

" 'Your Honor:

"'A sceleton, S-C-E-L-T-O-N, so to speak, in a closet.

"'My nephew died supposedly from the drug related reasons. It happened 12 to 14 years ago.

"'I have blamed my sister and her broken marriage for it. She also refused my advise, A-D-V-I-S-E.

"'I remember at work once to mention the fact that my N. died from over-d.

"'It will not influence my decision one way or the other.

"'G. Burns.'

"Then on the other side it says:

"'I just remembered it.'"

The court concluded that the juror: "Just appears to me to be somebody who is quite conscientious in taking literally what I told them: If something comes to their mind that they hadn't thought about when a question was asked to let us know," and declined a defense suggestion to excuse the juror and substitute an alternate. The defendant contends that this ruling constituted an abuse of discretion, as the juror's failure to answer the question on voir dire was juror misconduct and presumptively prejudicial.[1]

---

[1]On voir dire, defense counsel also questioned the jury regarding its knowledge of marijuana: "What we're concerned with at this point is whether there's anyone in the jury box who has had any more exposure to the subject mater of marijuana thatn [sic] the average person gerts [sic] through the news media. [¶] So, for example, if you've ever used marijuana. If you've ever signed petitions to make the laws tougher or easier on marijuana. If you've ever done a study on marijuana in school and wrote a paper on it. If you've ever had a friend, relative or neighbor whose had any of the experiences that I've mentioned abd [sic] they told you about it. [¶] Anything beyond what the average person gets through the news media."

Juror George Burns did not respond to this question either. On appeal, counsel presents this as an additional act of misconduct. We cannot accept this contention as there is no reason to believe that the fatal overdose suffered by juror Burns' nephew resulted from marijuana—and thus no evidence that he concealed on voir dire a greater knowledge of the subject than that known to the average person.

I

On appeal, the defendant relies principally on *People* v. *Diaz* (1984) 152 Cal.App.3d 926 [200 Cal.Rptr. 77] to support his contention. In *Diaz*, a woman juror revealed in midtrial that she had been the victim of rape 13 years previously in which her assailant had held a knife on her. The defendant in *Diaz* was on trial for assault with a deadly weapon (a knife) and during voir dire defense counsel had asked the prospective jurors, " 'Have any of you or has any one close to you ever been a complaining witness *or a victim in a case of this kind?*' " (*People* v. *Diaz, supra,* 152 Cal.App.3d at p. 930 (italics in original).) In explaining her failure to answer the question, the juror stated that it never occurred to her that her rape was an assault with a deadly weapon, and that she would not be biased in her determination. (*People* v. *Diaz, supra,* at p. 931.) The *Diaz* court concluded that this was juror misconduct "regardless whether nondisclosure was unintentional and based upon a good-faith misunderstanding of the meaning of the question . . . ." (*People* v. *Diaz, supra,* at p. 938.) The court further went on to hold that the juror's denial of bias was "self-serving" and could not be taken seriously as "the prior experience may cause unconscious bias. Only individuals of strong character would not be affected. . . . Subconsciously, the juror may tend to favor the prosecution . . . ." (*People* v. *Diaz, supra,* at p. 939.)

We cannot accept the rationale in *Diaz*. This district first addressed this question more than 15 years ago in *People* v. *Resendez* (1968) 260 Cal.App.2d 1, 10-11 [66 Cal.Rptr. 818].) There, a woman juror in a child molestation case denied on voir dire that an event of a similar nature had happened to her. Subsequently, during jury deliberations, the juror recalled that her stepfather had sexually caressed her, an incident which she had forgotten until that time. The court found no juror misconduct, in that "Mrs. Robinson did not intentionally conceal, but had forgotten the earlier incident in her life which precipitated no legal proceedings and differed substantially from the subject case. She was then a developed adolescent whose stepfather during a moment of sexual excitement pressed her to him, fully clothed, and asked whether it felt good, but he did not feel beneath her garments." (*People* v. *Resendez, supra,* 260 Cal.App.2d at p. 11.) The court further concluded that "Mrs. Robinson's remarks do not disclose a biased or prejudiced mind against appellant . . . ." (*People* v. *Resendez, supra,* at p. 11.) We conclude that the rationale in *Resendez* is the proper rule to be applied in such cases.

It is clear that where a juror intentionally lies on voir dire, such an act constitutes misconduct. (*People* v. *Castaldia* (1959) 51 Cal.2d 569 [335 P.2d 104].) Similarly, it is misconduct for a juror to read newspaper ac-

counts of the trial (*People* v. *Wong Loung* (1911) 159 Cal. 520, 525-527 [114 P. 829]), contact an outside attorney for advice during deliberations (*People* v. *Honeycutt* (1977) 20 Cal.3d 150, 157 [141 Cal.Rptr. 698, 570 P.2d 1050]) or question the police for information about the case (*People* v. *Pierce* (1979) 24 Cal.3d 199, 205 [155 Cal.Rptr. 657, 595 P.2d 91]).

But to find misconduct where "concealment" is unintentional and the result of misunderstanding or forgetfulness is clearly excessive. It is with good reason that the law places severe limitations on the ability to impeach a jury's verdict. To hold otherwise would be to declare "open season" on jury verdicts not to a party's liking. A green light would be given for every unsuccessful litigant to root out after-the-fact evidence of any "subconscious bias." That such cases would be forthcoming is amply illustrated by the recent United States Supreme Court case of *McDonough Power Equipment, Inc.* v. *Greenwood* (1984) 464 U.S. 548 [78 L.Ed.2d 663, 104 S.Ct. 845]. There, in a civil matter, plaintiff's counsel asked the jurors whether any member of their family had been injured in an accident that resulted in a disability or prolonged pain and suffering. After judgment had been rendered for the defendant, plaintiff then produced a deposition from a Navy recruiter that in an enlistment application filled out by a son of one of the jurors, the son had stated that he had suffered a broken leg in an explosion of a truck tire—a fact not volunteered by the juror on voir dire. The juror explained this failure on the grounds that he did not think counsel's question covered that kind of incident. The court noted that, "The varied responses to respondents' question on *voir dire* testify to the fact that jurors are not necessarily experts in English usage. Called as they are from all walks of life, many may be uncertain as to the meaning of terms which are relatively easily understood by lawyers and judges. Moreover, the statutory qualifications for jurors require only a minimal competency in the English language." (*McDonough, supra,* 464 U.S. 548, — [78 L.Ed.2d 663, 671, 104 S.Ct. 845, 849].) That jurors may be confused by counsel's questions on voir dire is understandable. Indeed, in the instant case, counsel's question was inartfully framed.

"Another catch-all question: Is there anybody in the jury who up to this point has had anything in their background come to mind who's wondering if I asked you a question where you would have to tell me about it? This is what's known as the skeleton in the closet question." We must admit that we are entirely unsure what information counsel was soliciting with this question or how it could be answered. If counsel's query can confound a panel of appellate justices, it is not unreasonable to assume that it might confuse an average juror as well. To regard such misunderstanding as juror misconduct—and presumptively prejudicial—is an entirely unwarranted result.

As the Supreme Court noted in *McDonough*, "To invalidate the result of a three-week trial because of a juror's mistaken, though honest response to a question, is to insist on something closer to perfection than our judicial system can be expected to give. A trial represents an important investment of private and social resources, and it ill serves the important end of finality to wipe the slate clean simply to recreate the peremptory challenge process because counsel lacked an item of information which objectively he should have obtained from a juror on *voir dire* examination." (*McDonough, supra*, 464 U.S. 548, 555 [78 L.Ed.2d 663, 671, 104 S.Ct. 845, 850].) "This court has long held that '"[a litigant] is entitled to a fair trial but not a perfect one," for there are no perfect trials.' [Citations.]" (*McDonough, supra*, 464 U.S. 548, 553 [78 L.Ed.2d 663, 669, 104 S.Ct. 845, 848].)

■■■ To adopt the alternative holding articulated by *Diaz* is clearly inconsistent. Our own Supreme Court has stated that the applicable standard for excusing a juror in midtrial—even where the juror forthrightly admits that he is biased—is whether there is good cause for the trial court to conclude that he is unable to perform his duty. (*People* v. *Compton* (1971) 6 Cal.3d 55, 59 [98 Cal.Rptr. 217, 490 P.2d 537].) To conclude that a juror is guilty of misconduct—thereby rendering the verdict presumptively prejudicial (*People* v. *Pierce* (1979) 24 Cal.3d 199, 207 [155 Cal.Rptr. 657, 595 P.2d 91]; *People* v. *Honeycutt* (1977) 20 Cal.3d 150, 156 [141 Cal.Rptr. 698, 570 P.2d 1050])—because the juror has unintentionally failed to disclose a fact that *might* make him biased, and then to further discount the juror's denials of bias as "self-serving" is certainly anomalous. A much harsher standard would be imposed for a forgetful juror than one who is openly prejudiced against a party. Such a result is out of all proportion to the nature of the error, and is clearly inconsistent with the ends to be achieved.

Accordingly, we conclude that the proper test to be applied to unintentional "concealment" is whether the juror is sufficiently biased to constitute good cause for the court to find under Penal Code sections 1089 and 1123 that he is unable to perform his duty. ■■■ In the instant case, we conclude that the trial court did not abuse its discretion in determining that the juror was not biased. The juror himself stated that his decision would not be affected, and the court drew the reasonable inference that the juror was only coming forward because he was conscientious in his duty. "No individual comes to jury duty with his mind a blank slate, and it is in the balanced wisdom of group experience applied to collective deliberation that the strength of the jury system theoretically lies." (*People* v. *Resendez, supra*, 260 Cal.App.2d at p. 11.) We therefore find no error in the court's decision not to exclude the juror.

The judgment is affirmed.

McClosky, J., and Arguelles, J., concurred.

Appellant's petition for review by the Supreme Court was denied August 29, 1985.