[No. B146793. Second Dist., Div. Six. Sept. 19, 2002.]

THE PEOPLE, Plaintiff and Respondent, v.
RODERICK TERRELL BARBER, Defendant and Appellant.

**COUNSEL**

Raymond L. Girard, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Scott A. Taryle and Michael W. Whitaker, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**GILBERT, P. J.**—The jury is hopelessly deadlocked in a criminal trial. Here we conclude the trial court erred by asking questions of the jurors that revealed the identity of the lone holdout juror, by allowing the prosecution to examine the holdout juror, and by allowing testimony from only those jurors who claimed the holdout juror was not deliberating in good faith.

Roderick Terrell Barber appeals a judgment after conviction of first degree murder with findings that he personally used and intentionally discharged a handgun. (Pen. Code, §§ 187, 12022.5, subd. (a)(1), 12022.53, subds. (b) & (d).) We reverse and remand for a new trial.

FACTS

*Voir Dire*

During voir dire, the court asked the jurors whether any of them had been criminally charged or arrested. Juror No. 5 did not mention an incident years earlier in Texas when he was fingerprinted and falsely identified as a crime suspect.

*Trial*

Raynada L. testified that she and Barber entered an apartment and, when inside, Barber pointed a gun at Darrien Mays. Barber told Mays to "Shut up" and asked him, "Do you wanna die tonight?" He then shot Mays at least four times. Ronna Criss, Mays's girlfriend, also saw Barber shoot Mays. Mays died as a result of the gunshot wounds.

*Deadlocked Jury and Hearing on Good Faith Deliberations*

The foreperson informed the court that the jury was "hopelessly deadlocked" at 11 to 1, and that the jurors had deliberated in good faith. In a chambers conference, Barber's counsel objected to questioning the jurors. That objection was overruled. The court asked the jurors whether everyone was deliberating in good faith. Seven jurors said yes, five jurors answered no. The court conducted a hearing to question only the jurors who claimed there was misconduct. This questioning revealed that Juror No. 5 was the lone holdout juror for acquittal. The court then allowed counsel for the prosecution and the defense to question jurors about alleged misconduct of Juror No. 5.

Juror No. 3 testified that on the first day of deliberations, Juror No. 5 said he was not going to change his mind. Juror No. 3 said Juror No. 5 was satisfied his position was correct based on the evidence. Jurors Nos. 4 and 9 said Juror No. 5 was not deliberating. But Juror No. 4 testified Juror No. 5 listened to other jurors. Juror No. 9 testified Juror No. 5 tried to answer all questions other jurors asked. Juror No. 10 testified that it was his opinion Juror No. 5 was not deliberating. He testified that early in deliberations he respected Juror No. 5's opinion but later Juror No. 5 became "close-minded."

Juror No. 12 said Juror No. 5 "doesn't need to hear anymore and it doesn't matter what we do. We could do whatever we wanted, but he made up his mind." Juror No. 12 came to this conclusion after being dissatisfied with Juror No. 5's reasons for not believing one of the prosecution's witnesses.

Jurors Nos. 9 and 12 testified that Juror No. 5 told the jury that he had been arrested. Jurors Nos. 4, 9 and 10 testified that he said he was falsely identified by a witness as a suspect in a robbery. They testified they believed this incident influenced his deliberations.

Juror No. 5 testified he did not mention during voir dire that he had been falsely accused of a crime in Texas because he did not remember it. The

court asked him if he recalled being asked whether he had been arrested or charged. He answered, "Yes. But I had never been charged . . . ." He said he was not arrested. The police took him to the scene of the crime where a witness identified him. He was then taken to the "courthouse" and fingerprinted.

The court then allowed the prosecutor to examine Juror No. 5 and ask questions about his thoughts during deliberations. The prosecutor asked Juror No. 5 if he mentioned the Texas incident in deliberations and whether evidence in this case triggered his thoughts about it. The prosecutor then asked why he felt it was important to mention it in deliberations and whether it affected the way he voted. Juror No. 5 said the Texas incident did not influence his vote.

Juror No. 5 testified, "I made a promise to myself when I go in that jury room and if anyone start [sic] acting the fool and trying [sic] to corrupt everybody or confuse me, I will shut them off." He said this meant, "I didn't want to listen to nothing—if they didn't say nothing about the testimony . . . ."

After completing the examination of Juror No. 5, the prosecutor moved the court to dismiss him from the jury. The court granted the motion and replaced Juror No. 5 with Alternate Juror No. 1.

The court found Juror No. 5 failed to participate in deliberations. It stated, "early in the discussions [Juror No. 5] decided that he was not going to participate further in the deliberations or listen to what other jurors had to say." The court ruled the nondisclosure of the Texas incident also justified dismissal of Juror No. 5, although it may have been "an innocent mistake."

DISCUSSION

*Dismissal of Juror No. 5*

Barber contends the court erred by dismissing Juror No. 5 and its inquiry into misconduct improperly allowed the prosecutor to examine a holdout juror about his deliberations.

A. *Waiver*

The Attorney General responds that Barber waived this issue by not objecting in the trial court. We disagree. He correctly notes that Barber did not object while the prosecutor questioned Juror No. 5. But he had previously objected in chambers to questioning the jurors after the foreperson

stated the jury was deadlocked. Moreover, the trial court had the duty to conduct a reasonable inquiry into juror misconduct consistent with defendant's right to a fair trial. (*People v. Engelman* (2002) 28 Cal.4th 436, 442 [121 Cal.Rptr.2d 862, 49 P.3d 209].) Such constitutional issues may be reviewed on appeal even where the defendant did not raise them below. (*People v. Allen* (1974) 41 Cal.App.3d 196, 201, fn. 1 [115 Cal.Rptr. 839]; *People v. Norwood* (1972) 26 Cal.App.3d 148, 153 [103 Cal.Rptr. 7] ["A matter normally not reviewable upon direct appeal, but . . . vulnerable to habeas corpus proceedings based upon constitutional grounds may be considered upon direct appeal . . ."].)

Absent waiver, the Attorney General contends the trial court properly dismissed Juror No. 5 for misconduct because the juror did not deliberate, concealed a Texas arrest, and was prejudiced. We first consider whether the court conducted an adequate inquiry "reasonably necessary to determine" if the juror should be discharged. (*People v. Burgener* (1986) 41 Cal.3d 505, 520 [224 Cal.Rptr. 112, 714 P.2d 1251], overruled on other grounds by *People v. Reyes* (1998) 19 Cal.4th 743, 753 [80 Cal.Rptr.2d 734, 968 P.2d 445].)

### B. *Allowing the Attorneys to Examine the Jurors*

"[A] trial court's inquiry into possible grounds for discharge of a deliberating juror should be as limited in scope as possible . . . ." (*People v. Cleveland* (2001) 25 Cal.4th 466, 485 [106 Cal.Rptr.2d 313, 21 P.3d 1225].) The purpose of this rule is to protect "the sanctity of the jury's deliberations." (*Ibid.*) " '[T]o avoid a chilling effect on the jury's deliberations, a trial court may decline to require jurors to testify when the testimony will relate primarily to the content of the jury deliberations.' " (*Id.* at p. 484, italics omitted.)

" '[A]ny investigation must be conducted with care so as to minimize pressure on legitimate minority jurors.' [Citation.]" (*People v. Cleveland, supra,* 25 Cal.4th at p. 478.) Because of the delicate balance between the court's right to know about misconduct and the privacy of the deliberations, only the court should conduct the inquiry. (*Id.* at p. 485.) "[P]ermitting the attorneys for the parties to question deliberating jurors is fraught with peril . . . ." (*Ibid.*)

The court erred by allowing the defense counsel and the prosecutor to question the deliberating jurors about misconduct. (*People v. Cleveland, supra,* 25 Cal.4th at p. 485.) This error was compounded by the manner in which the court conducted the hearing. It first allowed the prosecutor to

question the five jurors who complained about Juror No. 5. The information obtained from these jurors allowed the prosecution to learn that Juror No. 5 was a holdout juror. The court then allowed the prosecutor to extensively examine Juror No. 5. The prosecutor knew that her examination could lead to his dismissal. What should have been the court's sensitive inquiry into alleged juror misconduct was instead an adversarial proceeding with the juror on trial. This amounted to an improper delegation of the court's responsibility.

The court also allowed the prosecutor to probe into Juror No. 5's thoughts during deliberations. She asked Juror No. 5 if he mentioned the Texas incident in deliberations and whether evidence in this case triggered his thoughts about it. She asked him why he felt it was important to mention it in deliberations and whether it affected the way he voted. The court erred by allowing the prosecutor, an advocate, to intrusively question the holdout juror about his deliberations. (*People v. Cleveland, supra*, 25 Cal.4th at p. 484.) "[S]uch inquiry could in itself have risked pressuring the dissenting juror to conform [his] vote to that of the majority. [Citation.]" (*People v. Johnson* (1992) 3 Cal.4th 1183, 1255 [14 Cal.Rptr.2d 702, 842 P.2d 1].)

### C. *Adequacy of the Inquiry*

Barber contends Juror No. 5 was improperly dismissed because the inquiry into misconduct was inadequate and fundamentally unfair. We agree.

When the court is informed a juror is not deliberating, it may make " 'whatever inquiry is reasonably necessary to determine' " if there is misconduct. (*People v. Cleveland, supra*, 25 Cal.4th at p. 484; *People v. Burgener, supra*, 41 Cal.3d at p. 520.) But the court may not dismiss a juror unless it appears as a " 'demonstrable reality' that the juror is unable or unwilling to deliberate. [Citations.]" (*Cleveland*, at p. 484.)

Of the 11 jurors who voted guilty, 6 informed the court that Juror No. 5 deliberated in good faith. But when the court held the hearing on misconduct, it did not call those jurors to testify. It called only the five who claimed Juror No. 5 was not deliberating. To assess Juror No. 5's conduct, the court should have heard testimony from the six jurors who stated Juror No. 5 was deliberating in good faith. The hearing was fundamentally unfair because the court restricted the evidence primarily to witnesses supporting the prosecution's position. Proceedings that exclude relevant defense witnesses are constitutionally inadequate. (Cf. *Rosen v. United States* (1918) 245 U.S. 467, 471 [38 S.Ct. 148, 150, 62 L.Ed. 406] ["truth is more likely to be arrived at by hearing the testimony of all persons of competent understanding who may

seem to have knowledge of the facts involved in a case"]; *People v. Bryant* (1984) 157 Cal.App.3d 582, 590-594 [203 Cal.Rptr. 733].) Here the court's inquiry was not sufficient. (*People v. Burgener, supra*, 41 Cal.3d at p. 519.) The court thus obtained an incomplete version of Juror No. 5's participation from those most likely to harbor resentment against him. (Cf. *People v. Bowers* (2001) 87 Cal.App.4th 722, 726 [104 Cal.Rptr.2d 726] [court determined misconduct issue after questioning all jurors]; *People v. Feagin* (1995) 34 Cal.App.4th 1427, 1437 [40 Cal.Rptr.2d 918] [court made findings on juror misconduct only after it interviewed all jurors].)

The Attorney General, citing *People v. Pinholster* (1992) 1 Cal.4th 865, 928 [4 Cal.Rptr.2d 765, 824 P.2d 571], argues the court need not always question all jurors about juror misconduct. In *Pinholster*, two jurors read a newspaper article praising the trial tactics of the prosecution. The court admonished the two jurors to disregard the article, and instructed the other jurors who had not read the article not to do so. Although our Supreme Court said that "individual questioning may have been preferable," in this particular case, the court's failure to privately question each juror was not constitutionally required. The facts here are far different. A majority of the jury who said there was no misconduct did not testify. Moreover, because the vote was 11 to 1, and the focus was on the defense holdout juror, "the most extreme care and caution were necessary in order that the legal rights of the defendant should be preserved." (*Burton v. United States* (1905) 196 U.S. 283, 307 [25 S.Ct. 243, 250, 49 L.Ed. 482].) The court's actions did not meet this standard.

The court did not find Juror No. 5 was biased but did find he did not deliberate because he did not listen to other jurors. But Juror No. 5 testified, "I didn't want to listen to nothing—if they didn't say nothing about the testimony." In *Engelman*, our Supreme Court recently stated: "It is not always easy for a juror to articulate the exact basis for disagreement after a complicated trial, nor is it necessary that a juror do so. . . . [I]t is not required that jurors deliberate well or skillfully." (*People v. Engelman, supra*, 28 Cal.4th at p. 446.) " 'The circumstance that a juror does not deliberate well or relies upon faulty logic or analysis does not constitute a refusal to deliberate and is not a ground for discharge.' " (*Ibid.*; *People v. Cleveland, supra*, 25 Cal.4th at p. 485.) If we excuse the double negative, a reasonable interpretation of Juror No. 5's statements is that during deliberations he would not listen to matters that were not presented in court.

The six jurors whom the court did not call to testify believed Juror No. 5 deliberated in good faith. Jurors will sometimes make the mistake of concluding that a juror's strong disagreement with the majority is equivalent to

a refusal to deliberate. (*People v. Engelman, supra,* 28 Cal.4th at p. 446.) This may be such a case.

Of the jurors who stated Juror No. 5 was not deliberating, Juror No. 3 said during the first day of deliberations Juror No. 5 said he was not changing his mind. But Juror No. 3 also said Juror No. 5 told the jury he was satisfied that his position was correct based on the evidence. Juror No. 12 felt Juror No. 5 was not deliberating, partly because she did not like his reasons for disbelieving one of the prosecution's witnesses. But "the court may not discharge a juror for failing to agree with the majority of other jurors or for persisting in expressing doubts about the sufficiency of the evidence in support of the majority view . . . ." (*People v. Engelman, supra,* 28 Cal.4th at p. 446.)

The Attorney General argues that the evidence shows Juror No. 5 felt that discussions about the case were futile because he had made up his mind. Juror No. 10 testified that he respected what Juror No. 5 had to say at the beginning of deliberations. Yet, as the deliberations progressed, Juror No. 5 became "close-minded." But "[a] juror who has participated in deliberations for a reasonable period of time may not be discharged for refusing to deliberate, simply because the juror expresses the belief that further discussion will not alter his or her views. [Citation.]" (*People v. Cleveland, supra,* 25 Cal.4th at p. 485.) "It is not uncommon for a juror . . . to come to a conclusion about the strength of a prosecution's case early in the deliberative process and then refuse to change his or her mind despite the persuasive powers of the remaining jurors." (*People v. Bowers, supra,* 87 Cal.App.4th at p. 734.) Moreover, Juror No. 4 testified Juror No. 5 listened to other jurors and Juror No. 9 testified that he tried to answer all the questions other jurors posed.

Concerning the incident in Texas, Juror No. 5 denied he had been charged with a crime or arrested in Texas. He told the court he had forgotten about the incident during voir dire. The court did not find that he intentionally concealed the Texas incident. Nor did it find that in fact he had been charged or arrested, though it stated that it was close to one of those two possibilities. The court concluded that "Juror No. 5 should have disclosed this prior incident," but then asked, "Why didn't he? Was it an innocent mistake? Perhaps it was." Nevertheless, the court found misconduct. Yet, "to find misconduct where 'concealment' is unintentional and the result of misunderstanding or forgetfulness is clearly excessive." (*People v. Jackson* (1985) 168 Cal.App.3d 700, 705 [214 Cal.Rptr. 346].)

The court's inquiry was inadequate. Its findings were derived from a stacked evidentiary deck. The error was prejudicial because the vote was 11

to 1 for conviction. (*People v. Cleveland, supra,* 25 Cal.4th at p. 486; *People v. Bowers, supra,* 87 Cal.App.4th at p. 736.)

The judgment is reversed and remanded for a new trial.

Coffee, J., and Perren, J., concurred.

A petition for a rehearing was denied October 16, 2002.